**MICHAEL N. FEUER**, City Attorney
**KATHLEEN A. KENEALY**, Chief Assistant City Attorney - SBN 212289
**SCOTT MARCUS**, Senior Assistant City Attorney - SBN 184980
**CORY M. BRENTE**, Senior Assistant City Attorney - SBN 115453
**MATTHEW W. McALEER**, Deputy City Attorney - SBN 278595
200 North Main Street, 6th Floor, City Hall East
Los Angeles, CA 90012
Phone No.: (213) 978-7043; Fax No.: (213) 978-8785
Email: Matthew.McAleer@lacity.org

*Attorneys for Defendant* **CITY OF LOS ANGELES**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONE AUSTIN, MICHELLE MICHLEWICZ <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF LOS ANGELES, OFFICER DOES 1 – 10 <br><br> Defendants. | **CASE NO.: CV20-03985-AB-JCx** <br> *Hon. Judge André Birotte Jr., Ctrm 7B, 7th Fl.* <br> *Mag. Judge Jacqueline Chooljian, Ctrm 750, 7th Fl.* <br><br> **DEFENDANT CITY OF LOS ANGELES' RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION** |

**PROPOUNDING PARTY:**      **Plaintiff ANTONE AUSTIN**

**RESPONDING PARTY:**      **Defendant CITY OF LOS ANGELES**

**SET NUMBER:**      **ONE**

Defendant **CITY OF LOS ANGELES** ("Defendant"), hereby responds to Plaintiff **ANTONE AUSTIN'S** First Set of Requests for Production as follows:

///

///

# I.

## PRELIMINARY STATEMENT

These responses are made solely for the purpose of this action.  Defendant has not completed their investigation of the facts or discovery in this action.  The following responses are based upon a diligent investigation by Defendant and upon such information available as of the date on which these responses are made.  These responses are made without prejudice to Defendant's rights to conduct further investigation and discovery and to offer at trial subsequently discovered evidence.  The documents and/or other tangible things produced are produced subject to Defendant's right to conduct further investigation and discovery and to offer at trial subsequently discovered evidence.  Defendant makes no incidental or implied admissions regarding the contents of any document referred to in these responses.

In addition, if responding party identifies a non-privileged item, the items may be obtained at the costs listed as follows: pictures cost $2.00 per picture, all compact/digital video discs and copies of communications recordings cost $10.00 per disc.  Any such items will only be requested from LAPD upon receipt of payment in full, check payable to "City of Los Angeles".

This preliminary statement is incorporated into each of the responses set forth below.

# II.

## REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**:

Please provide any and all audio and video related to this matter, including but not limited to 911 calls and officer Bodycam footage.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1**:

Objection.  This request is overbroad, vague and ambiguous, and seeks the production of documents that are confidential, privileged and protected from discovery pursuant to California Evidence Code Section 1043 and California Penal Code Sections

832.5, 832.7 and 832.8, and the privilege of self-critical analysis.  In addition, Responding Party objects on the grounds that this request seeks information which is privileged pursuant to California Evidence Code, sections 1040 et seq. and California Government Code Section 6254.  Responding Party further objects on the ground that disclosure of the requested materials would violate the privacy rights of the involved police officers under the "official information" or "governmental privilege" accorded under Federal Law.  Some information is not subject to disclosure absent prior in-camera judicial review to determine whether the need for continued confidentiality is outweighed by the litigant's needs for the information sought.  *Kerr v. United States District Court*, 511 F.2d 192 (9th Cir. 1975), aff. 426 U.S. 394, 96 S.Ct. 2119 (1976); *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990); *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D.Cal. 1987).  The documents requested are protected by the privilege and doctrine of self-critical analysis.  See *Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423 (9th Cir. 1992).

Without waiving these objections and subject thereto, Responding Party identifies the following documents:

1.  LAPD Communications Division audio recordings.

See attached privilege log for identification of records responsive to this request that are being withheld until the Court's entry of an appropriate protective order.

**REQUEST FOR PRODUCTION NO. 2**:

Please provide any and all documents relating to this incident, including but not limited to police reports, intraoffice memoranda, intraoffice correspondence, and police discipline reports.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2**:

Objection.  This request is overbroad, vague and ambiguous, and seeks the production of documents that are confidential, privileged and protected from discovery pursuant to California Evidence Code Section 1043 and California Penal Code Sections 832.5, 832.7 and 832.8, and the privilege of self-critical analysis.  In addition,

Responding Party objects on the grounds that this request seeks information which is privileged pursuant to California Evidence Code, sections 1040 et seq. and California Government Code Section 6254.  Responding Party further objects on the ground that disclosure of the requested materials would violate the privacy rights of the involved police officers under the "official information" or "governmental privilege" accorded under Federal Law.  Some information is not subject to disclosure absent prior in-camera judicial review to determine whether the need for continued confidentiality is outweighed by the litigant's needs for the information sought.  *Kerr v. United States District Court*, 511 F.2d 192 (9th Cir. 1975), aff. 426 U.S. 394, 96 S.Ct. 2119 (1976); *Martinez v. City of Stockton*, 132 F.R.D. 677 (E.D. Cal. 1990); *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D.Cal. 1987).  The documents requested are protected by the privilege and doctrine of self-critical analysis.  See *Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423 (9th Cir. 1992).

The terms "intraoffice memoranda" and "intraoffice correspondence" is vague, ambiguous, overbroad, and seeks attorney-client privileged and attorney work product privileged documents.

Without waiving these objections and subject thereto, Responding Party identifies the following documents:

1.    May 24, 2019 LAPD Arrest Report, Antone Austin, DR No. 19-0612390;

2.    LAPD Booking and Identification Record, Antone Austin, Booking No. 5638873;

3.    May 24, 2019 Superior Court of California, County of Los Angeles, Probable Cause Determination (Declaration), Antone Austin, DR No. 19-01612390;

4.    May 24, 2019 LAPD Booking Approval, Antone Austin;

5.    May 24, 2019 LAPD Arrest Report, Michelle Michlewicz, DR No. 19-0612390;

6.    LAPD Booking and Identification Record, Michelle Michlewicz,

Booking No. 5638853;

7.     May 24, 2019 Superior Court of California, County of Los Angeles, Probable Cause Determination (Declaration), Michelle Michlewicz, DR No. 19-01612390;

8.     May 24, 2019 LAPD Booking Approval, Michelle Michlewicz;

9.     May 24, 2019 LAPD Investigative Report, DR No. 19-0612391;

10.    May 24, 2019 LAPD Adult Detention Log;

11.    LAPD Incident Recall, Incident LPD190524003717; and

12.    21 digital color photographs taken by Sergeant Flores.

**REQUEST FOR PRODUCTION NO. 3**:

Please provide any and all training materials provided to Los Angeles Police Department employees regarding the use of force on civilians.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3**:

Objection.  This request is vague, ambiguous, and overbroad.

Without waiving these objections and subject thereto, Responding Party identifies the following documents:

1. California Commission on Peace Officer Standards and Training's mandated curriculum, including but not limited to Learning Domain 20 Use of Force/Deescalation, available at https://post.ca.gov/regular-basic-course-training-specifications;

2. LAPD Manual, including but not limited to Section 556 Use of Force, available at https://www.lapdonline.org/lapd_manual/; and

3. LAPD Use of Force-Tactics Directive No. 1.1, August 2017.

///
///
///
///
///

**REQUEST FOR PRODUCTION NO. 4**:

Please provide any and all training materials provided to Los Angeles Police Department employees regarding responding to a violation of a restraining order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4**:

Objection.  This request is vague, ambiguous, and overbroad.

Without waiving these objections and subject thereto, Responding Party identifies the following documents:

1. California Commission on Peace Officer Standards and Training's mandated curriculum, including but not limited to Learning Domain 25 Domestic Violence, available at https://post.ca.gov/regular-basic-course-training-specifications;

2. LAPD Office of the Chief of Police Special Order No. 3 regarding Restraining Orders, January 29, 2018.

**REQUEST FOR PRODUCTION NO. 5**:

Please provide any and all training materials provided to Los Angeles Police Department employees regarding implicit bias.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5**:

Objection.  This request is vague, ambiguous, and overbroad.  The term "implicit bias" is vague and ambiguous.

Without waiving these objections and subject thereto, Responding Party identifies the following documents:

1. California Commission on Peace Officer Standards and Training's mandated curriculum, including but not limited to Learning Domain 42 Cultural Diversity/Discrimination, available at https://post.ca.gov/regular-basic-course-training-specifications;

2. LAPD Manual, including but not limited to Section 345 Policy Prohibiting Biased Policing https://www.lapdonline.org/lapd_manual/; and

1      3. LAPD Office of the Chief of Police Special Order No. 15, regarding revised

2         policy prohibiting racial profiling, March 31, 2009.

3

4   Dated:  September 10, 2020        **MICHAEL N. FEUER**, City Attorney

5                                     **KATHLEEN A. KENEALY**, Chief Asst City Atty
                                      **SCOTT MARCUS**, Senior Ass't City Attorney
6                                     **CORY M. BRENTE**, Senior Ass't City Attorney

7
                                By:  _____/s/ Matthew W. McAleer_____
8                                     **MATTHEW W. McALEER,** Deputy City Attorney

9                                     *Attorneys for Defendant* **CITY OF LOS ANGELES**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**ANTONE AUSTIN, et al. v. CITY OF LOS ANGELES, et al.**</u>
**Case No. CV20-03985-AB-JCx**

**PRIVILEGE LOG ACCOMPANYING DEFENDANT CITY OF LOS ANGELES' RESPONSES TO PLAINTIFF'S FIRST SET OF REQUEST FOR PRODUCTION OF DOCUMENTS**

| LOG No. | DATE OF DOCUMENT | IDENTITY & POSITION OF RECIPIENTS | IDENTITY & POSITION OF AUTHOR | DOCUMENT DESCRIPTION | PRIVILEGE CLAIMED | PRESENT LOCATIONS |
|---|---|---|---|---|---|---|
| 1. | May 24, 2019 | LAPD | Various | Officers' Body Worn Videos | Official Information Privilege; Right to Privacy; Peace Officer Personnel Records; Self Critical Analysis Privilege; Subsequent and Remedial Measures | Los Angeles Police Department |

## DECLARATION OF DETECTIVE JAVIER LOZANO

I, **JAVIER LOZANO**, declare that I am employed by the Los Angeles Police Department ("Department"). I currently hold the rank of DETECTIVE III and am assigned in the Legal Affairs Division of the Los Angeles Police Department (LAPD). This is a supervisory position. Under the LAPD policy and procedures manual, volume 2, section 585.20 the Legal Affairs Division has amongst its duties is charged with the responsibility of responding to all request for documents in Civil Liability matters and determining the confidential nature of items requested by legal processes and coordinating the activities concerning the production of evidence or records in court including the proper release of documents pursuant to requests for production, subpoenas and <u>Pitchess</u> Motions.

I am in receipt of and have reviewed plaintiff's First Set of Request for Production of Documents in the case of **ANTONE AUSTIN, et al v. CITY OF LOS ANGELES, et al. – CV20-03985-AB-JCx.** I am personally familiar with the type of documents sought in this request and rationale for seeking to withhold them from discovery. I submit this Declaration in support of the attached privilege log. Where I do not have personal knowledge of all the facts set forth within this matter, I am providing the following information based upon information and belief, and if called as a witness, I would competently testify to the following:

**Affirmation that the agency collected and/or generated the material in dispute and has maintained its confidentiality.**

1. My current responsibilities require that I have knowledge of the policies and procedures followed by the Department. I am therefore qualified to state Department policies regarding documents produced and maintained by the various divisions and entities contained within the Department including, but not limited to, police officers' personnel files, background investigation personnel files, personnel complaints (Internal affairs investigations) and use of force investigations.

An Internal affairs investigation is the basic area of confidential documents as sought by plaintiff in this matter.  Use of force investigations are conducted by the LAPD's Force Investigation Division.

2.    The Department maintains these requested documents with the expectation that such files and investigations and the contents of the files and investigation will not be subject to disclosure, absent good cause and a court order. In general should the facts obtained during any internal investigation, no matter who initiated the investigation, disclose additional misconduct or potential violation of Department policy, the Department investigates those facts as well. Not only does the Department investigate citizen complaints, the Department also initiates its own personnel investigations on a variety of issues, including allegations or observations of perceived misconduct and violation of internal police policies, training and practices and uses of force.

Under California state law, Penal Code section 832.5, the Department must establish a procedure to investigate complaints by members of the public. This has been done. Also consistent with the requirements of Penal Code section 832.5, the complaints and the reports and findings on the complaints are maintained either in the officer's personnel file, for sustained complaints and in other files, including the internal affairs department for complaints which were not sustained, found to be "unfounded" or there was a finding of "exoneration." While the state law requires the findings be retained for a period of at least 5 years, as a practice to provide a further review of the officers and the Department as a whole, the LAPD maintains the complaints and investigations for a longer period of time. Such personnel investigations, whether commenced by citizen complaint, via lawsuit/claim or by internal police sources, are reviewed by appropriate command officers in the Department.   This review has several purposes: (1) to determine whether the involved officers violated any Department policies or procedures; (2) to determine whether administrative discipline and/or retraining of the involved officers is

necessary; (3) to ascertain if police policies and procedures in such areas as supervision, training, tactics, policies, etc. should be modified.  In sum, Personnel Complaint Investigations are an essential aid to providing critical evaluation of Department officers and policies, and to determine the most effective way to serve the citizens of Los Angeles.

3.     Personnel Complaint Investigations and use of force investigations contain compelled statements, from the Defendant officers, as well as the officers responding to the scene. These reports are deemed confidential by California statute and Federal case law.   See Penal Code §832.7; <u>Sanchez v. Santa Ana Police Department, 936 F. 2d 1027, 1033-34 (9th Cir. 1990)</u>.  The officers are ordered to give a statement for administrative purposes under the admonishment that the failure to provide a statement will be viewed as insubordination and subject the officer to discipline, including termination. In exchange for giving a compelled and candid statement, the officers are admonished that the statement is intended for administrative purposes only and cannot be used against them in a criminal case should one arise. Therefore, these parts of an internal affairs and/or use of force investigation are expected to be confidential and are maintained as confidential reports.  Additionally, Personnel complaint investigations and use of force investigations, like an officer's personnel packages, include information which is both personal in nature and could potentially impact the liberty interests of the involved police officers and/or civilians named within.  The information obtained from personnel packages, personnel complaint investigations and use of force investigations can and have been used to initiate disciplinary action against officers, as well as evidence in disciplinary proceedings where the officer's conduct was considered to be contrary to Department policy. Personnel complaints and internal affairs reports are maintained as confidential reports inside the individual officer's personnel package.  Use of force reports also are considered part of an officer's personnel package.

4.     Personnel files, complaint investigations and use of force investigations contain references, records and analysis of training and disciplinary records.  As a matter of course, the Department maintains training records to monitor what courses and areas of police work an officer has completed or become proficient in.  These records may be an aid in determining an officer's assignment or promotability. Additionally, as part of the on-going self-analysis and desire of the Department to police itself, training records are used to determine if further formal training or class room training would aid in minimizing risks or situations which arise. One of the purposes of commenting on an officer's training record and/or discipline history during a personnel investigation is to determine if there are trends or deficiencies which can be addressed as to the individual officer or the Department as a whole. This analysis is part of the Department's effort to self-police. If such information is disclosed, it may limit the investigator's desire to disclose or analyze such information as it may be used against the Department in subsequent litigation. Thus, maintaining the confidentiality of the list of classes taken by the officer is not as important as maintaining the analysis and insight of reviewing officers as to the results or deficiencies of such training.

5.     A personnel investigation necessarily involves the thought process of the assigned investigator. This thought process is evidenced by the topics on which the investigator chooses to question the witnesses, his/her decision  to re-interview witnesses to clarify points or facts and in the investigator's transmittal letter wherein the author may point out discrepancies, corroborative facts and/or comments about a witnesses credibility, reliability or ability to perceive the incident. These comments may be included in a report for the ease of the eventual adjudicator and to streamline the analytical process. Disclosure of the personnel investigation or the transmittal letter or adjudicator's rationale, is likely to lead to further questioning of the investigator or the deposition of the investigator who would be called upon to explain their thought process. Such an invasion is unwarranted and likely would

1  lead the investigator or the Department to not provide such summaries but have the
2  investigation turned over in to for review through the chain of command. Being able
3  to rely upon candid comments and summaries is of value to the Police Department
4  and streamlines the disciplinary process.  Such summaries and comments are made
5  with the expectation that they will remain confidential.  If such comments are
6  disclosed, the likely result is the investigators will cease to make them, which would
7  deprive the Department of a trained and seasoned investigator's objective personal
8  insight into a matter. The thought process of attorneys, judges and prosecutors and
9  other involved in the justice system have not been subject to disclosure.

10

11         **This official is familiar with the requested documents.**
12         6.     This     official     is     familiar     with     LAPD     personnel     files,
13  personnel/complaint investigations and use of force investigations, and is familiar
14  with, the requested categories of documents.

15

16         **The identification of the privacy and/or governmental interests that**
17  **would be threatened by disclosure**
18         7.     Unfettered release of an investigation into the alleged misconduct
19  occurring on the job, use of force investigations and personnel complaint reports has
20  the potential for untold negative results ultimately creating a harmful effect on the
21  Department, as well as the officers and their families.  For starters, disclosure of this
22  type of information would have a harmful effect on the privacy interest of individual
23  officers, as well as those individuals who brought the complaints, if any, against the
24  officers. As noted above one of the purposes of the official information privilege
25  and the reasons for an internal affairs investigation are to allow for critical self-
26  examination of the department, its training and tactics. Such examination is
27  necessary in the on-going efforts to improve the workings of LAPD.
28  ///

5

8.     In addressing the complaint and use of force investigations, the officers' statements in these investigations are not voluntary, but rather compelled. The use of the compelled information gives the investigator insight into the whole circumstance surrounding the incident. Certain law enforcement agencies, not limited to the Los Angeles County Sheriffs do not obtain a compelled statement as part of the investigation. The release of such confidential statements may lead investigators to focus their investigation just on the incident avoiding questions which may put the incident in a proper context or may lead the Department to stop seeking the compelled statement. In either event the goal of improving police work and properly training or disciplining officers would be lessened. It is important to note that the officers are forced to give these statements, because to refuse to do so, would almost certainly result in termination from their employment from the Los Angeles Police Department for insubordination pursuant to the Lybarger admonition. In this regard the administrative accused officers have less rights than a criminal defendant to remain silent, even though the officer's liberty interest is implicated.  In this case, plaintiff obtained the depositions of the officers. The officers gave their depositions without reference to or refreshing themselves with their own statements. Such a decision was undertaken to maintain the confidentiality of the compelled statements. It would seem unfair to allow for their disclosure after the fact such that the officers could potentially be impeached by their own compelled statement.

9.     In direct contrast, the complainants, as well as any witnesses, are not compelled to give statements, but rather have the freedom to voluntarily decide whether or not they want to give a statement.  This appears to be inherently unfair and prejudicial to the officers.  Specifically, it affords the Plaintiff, just by making a personnel complaint, which can be done without declaring facts under the penalty of perjury, knowing an internal investigation will be commenced, an unfair advantage should the complainant refuse to give a statement, but ordered disclosure of internal investigations would allow the complainant/plaintiff access to confidential

6

statements that can later be used against the officers at civil trial. The end result is entirely inconsistent with the fundamental principles of fairness and justice and reasons for obtaining the statement in the first place.

There are of course alternative means by which a plaintiff can obtain the officers version of the incident. According to the City Attorney's Office, it is not as if a plaintiff is prevented from obtaining the officers pre-trial testimony concerning an incident, because they have the ability, and the right, to propound a variety of discovery, including, but not limited to, taking the officers' depositions and propounding interrogatories and request for admissions.

10. Finally, persons interviewed by Internal Affairs, complaint investigators and/or use of force investigators are advised that their statements are being taken for the confidential use of the Department. These individuals' right to privacy will also be greatly affected because they are under the impression that their statements will remain confidential. Interestingly, experience has revealed that there are many witnesses who are reluctant to give statements, but eventually decide to do so, after being informed that these statements will remain confidential. Many non-party witnesses, to alleged misconduct, have expressed their concerns about possible retaliation if their identity is exposed. Many witnesses express their desire to remain anonymous. Personnel complaint investigations and use of force investigations are a useful and necessary tool for the Department to utilize in monitoring their officers. Without some type of protection from the public, the valuable, candid and beneficial information obtained from the personnel complaint investigations, would be adversely affected.

11. In terms of societal interests and governmental interests, it would inhibit the Department's ability to meaningfully engage in critical self-analysis. It is not unusual that statements made to investigators are against the self-interest of the witnesses interviewed, often even the penal interests of those involved. The officers provide these statements with the expectation that they will only be used for

1  Department Administrative purposes only.  This expectation allows for a more
2  trusted and open environment in which the officers are more candid in their
3  statements.   This ability to be forthcoming proves very useful to both the
4  Department and society as a whole.

5      12.   Moreover, many Internal Affairs personnel complaint and/or use of
6  force investigations include potentially embarrassing facts.   In obtaining a
7  compelled statement, an officer, shortly after a traumatic event, is asked to recall
8  details and comment upon his/her conduct and the actions of his/her partners or
9  other officers. These statements are obtained without the officer's ability to see the
10 whole picture of the incident, listen to radio broadcast, see photographs of the scene
11 or based upon reference to the entire factual basis of an incident. A compelled
12 statement is the limited view as perceived by one person  and quite often that
13 person's limited view is distorted  by plaintiff's and their counsels when taken out of
14 context of the entire event. At a minimum, disclosure of all personnel complaint
15 investigations and personnel records would cause needless intrusion of privacy
16 rights, as stated above, and would have a negative effect on our Department's effort
17 to conduct these important investigations.  As noted a <u>civilian or complainant</u> has
18 the right to invoke his or her right against self-incrimination, under the Fifth
19 Amendment to the United States Constitution, that invocation will be honored, or to
20 not participate after making an allegation and no statement will be obtained from
21 that person. Therefore, there will be no statement to disclose to the other parties to
22 the action.

23     13.   Based upon the foregoing, it is quite possible that officers, who would
24 otherwise be more open and candid during these investigations, would provide
25 statements, but not statements that would be beneficial to the self-critical analysis
26 process.  It is not to say that the officers would not be forthcoming, but rather that
27 these statements would be curtailed because of their belief that it may be used
28 against them in subsequent monetary civil proceedings.  The officers cannot choose

8

1    to delay to give a statement until they have reviewed the material or revisited the
2    scene. Ultimately, the sole purpose for which these types of investigations were
3    created, was to place a check and balance on the Department's personnel and enable
4    the citizens to have a voice.  In the event these investigations are not provided the
5    expected privacy and confidentiality interests, their significance and value will
6    greatly depreciate.  Unfortunately, it appears through the increase in civil lawsuits
7    LAPD internal affairs investigations are perceived as an inexpensive source of pre-
8    trial discovery for the Plaintiff, who, for the most part, is only concerned with a
9    monetary award. It appears plaintiff is seeking the benefits of full administrative
10   investigation at a time they are unwilling to undertake the time and effort to prove
11   their case.

12        14.    It should also be understood that the personnel complaint investigation
13   and use of force processes are distinct from the criminal investigations which often
14   arise from the same incident.  Relevant information obtained in an Internal Affairs
15   or use of force investigation, particularly, but not limited to administrative
16   interviews of potential or actual criminal defendants involved, is not a part of, and is
17   not shared with detectives conducting the concurrent criminal investigation.    If
18   potential criminal activity is discovered a separate team of investigators is assigned
19   the investigation to maintain the expected confidentiality of the officers' compelled
20   statements and privileged disciplinary and personnel records. This is done in order
21   to avoid any intrusion into a potential officer defendant's rights under the Fifth and
22   Sixth Amendments to the United States Constitution.    Therefore, unprotected
23   disclosure of personnel complaint investigations, particularly without prior judicial
24   scrutiny, could jeopardize an ongoing criminal investigation or prosecution.

25        15.    The materials and findings of a personnel file, personnel complaint and
26   use of force investigation are continuously maintained in protected files in order to
27   maintain their confidentiality.    They are not routinely shown to other City
28   Departments.  Even then, information which is not clearly relevant to the rationale

governing the request is redacted to ensure the utmost regard for the privacy rights of all involved parties.  The investigations are not available to the general public, except by court order.  In all instances, the Department requests an in camera hearing to determine the relevancy for releasing all, or part, of a given investigation, again ensuring the constitutionally protected privacy rights of those named, or otherwise identified, within the written investigation.

16.    In each case involving court-ordered disclosure of information from a Complaint Investigation sought in state or federal court, it is the Department's policy to seek a protective order limiting use of the information to the case at trial, and identifying those persons who may properly be granted access to the information. Absent a protective order, it becomes unrealistic to conceive that the large numbers of attorneys, secretaries, law clerks, paralegals, outside experts and police practices consultants and witnesses involved in many cases will be able to maintain proper confidentiality of personal, private material, absent an order which clearly delineates their responsibilities.  Such orders further request that said records be returned to the Department after the case has terminated, either by final judgment or otherwise. This request serves to ensure that the intrusion into the privacy and employment rights of those involved is limited to the underlying case, in which the facts are relevant.

17.    Even with a carefully written protective order, the release of an entire personnel complaint investigation, use of force investigation and/or personnel record and other background and hiring data without prior judicial review to determine relevancy and assess privacy concerns, ignores the constitutional protection given to individual privacy under the United States and California Constitutions, and which a third-party, such as the Department, is obligated to assert. In fact, the City Attorney's office is aware that experts who review and advise plaintiff's counsels in many cases, disclose information as learned in one case when giving opinions in another matter. Thus, even with a return of documents, it is impossible to "erase" the

1   memory of an expert who writes a report and refers to his/her own documents in
2   subsequent case.

3         18.    Another important factor involves the handling of these documents by
4   the Plaintiff's law office.  What safeguards are developed and exercised to maintain
5   the security of these documents and the information contained therein?  Often, the
6   Plaintiff's attorney shares offices with a variety of other law offices.  Accordingly, in
7   many of these types of practices, paralegals, law clerks, secretaries, copy machines,
8   libraries and conference rooms are shared to save costs.  What safeguards are
9   provided, and most importantly, who will act as the gatekeeper of these documents?
10  In the event these reports and/or information are inadvertently released, the City and
11  the City Attorney's Office are vulnerable to litigation, not only by the Plaintiff, but
12  also by their clients as well.  These are questions and concerns that cannot be
13  addressed by a protective order, even a carefully drafted one. Moreover, the City of
14  Los Angeles has also had experiences where the information is never returned at the
15  end of the case, and the justification is that this information must be retained
16  because it is necessary to shield against allegations of "malpractice."  In these
17  situations, the Court has lost jurisdiction of these cases, and cannot enforce the
18  provision requiring the return of documents. Even having everyone with approved
19  access to such confidential material to execute an agreement to abide by the
20  protective order is difficult to obtain and enforce.

21

22        **Describing that even with a specially crafted protective order, there still**
23  **remains a significant risk of harm.**

24        19.    In addition, a protective order would not prevent the Plaintiff from
25  abusing the ability to access these documents by conducting arbitrary and pre-trial
26  discovery fishing expeditions at the expense of the Department.   Any person
27  contemplating a lawsuit against the City of Los Angeles will initiate a complaint,
28  not for the intended use of correcting the problem or concern, but rather the ability

                                          11

1  of having the opportunity to utilize this information for impeachment purposes
2  against these officers and the City.

3      20.    As stated above, there is a high probability that harm will occur, not
4  only to the officers and their families, but also to the governmental and societal
5  interests involved.   The Department investigations, both prior to hiring and while
6  the officers are employed, are detailed, thorough and complete, but what incentive
7  would the Department have to continue this process, if the investigations are used
8  against them in subsequent civil proceedings?

9

10      **Projection of harm and other alternatives for obtaining this information.**

11      21.    There are reasonable alternatives for obtaining this type of information
12 through other litigation sources.  For example, there are plenty of discovery tools
13 that exist, such as deposition testimony, possible criminal testimony, if any, police
14 reports, interrogatories, admissions, radio communications, witnesses, if any, and
15 sergeant logs. In a case such as this, there is a report from the Coroner and the
16 County had the ability to investigate the matter.

17      Additionally, rather than compelling disclosure of an entire
18 investigation, including  of the investigator's and an analysis of training issues or
19 police policy, a more limited disclosure of information, such as a list of witnesses
20 and their contact information may provide parties with sufficient information to
21 investigate the matter and draw their own conclusions. This information has been
22 provided.  To order the disclosure of a complete investigation, including
23 investigator's analysis of the incident, disciplinary and training history, compelled
24 statements of the officers and analysis of credibility and consistency of witnesses,
25 would lead the investigators to limit their investigation to the facts at hand rather
26 than providing insight which may benefit the department as a whole and allow it to
27 correct and improve.

28

22.     The privacy and other protected interests of those named within the hiring package, personnel complaint investigations and personnel records are entitled, under the Constitution, to protection from the courts.  Prior in camera judicial review of the involved reports, and issuance of an appropriate protective order makes certain that these privacy concerns are not compromised beyond that degree necessary to the issues before the court.  Accordingly, on behalf of the Los Angeles Police Department and those officers whose personnel records are sought, I respectfully request these procedural protections in the instant case.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 10th day of September, 2020 at Los Angeles, California.

Det. III Javier Lozano, Declarant

13

# PROOF OF SERVICE

I, **NOE TISCARENO**, declare as follows:

I am over the age of 18 years, and not a party to this action. My business address is 200 North Main Street, City Hall East, 6th Floor, Los Angeles, California 90012, which is located in the county where the mailing described below took place.

On September 10, 2020, I served the foregoing document(s) described as: **DEFENDANT CITY OF LOS ANGELES' RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION** on all interested parties in this action:

**ATTORNEY FOR PLAINTIFFS:**
Faisal M. Gill, Esq.
Gill Law Firm
355 South Grand Street, Suite 2450
PMB No 1048
Los Angeles, CA 90071

I served a true copy of the document(s) above by:
[X] **By United States mail**. I enclosed the documents in a sealed envelope or package addressed to the person(s) at the address(es) mentioned above and:
[X] placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage full prepaid.

[X] I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

[X] I hereby certify under the penalty of perjury that the foregoing is true and correct.

Executed on September 10, 2020 at Los Angeles, California.

*/s/ Noe Tiscareno*
**NOE TISCARENO**, Declarant